## LAFAYETTE–SOUTH SIDE BANK v. COMMISSIONER OF INTERNAL REVENUE.

Court of Appeals of District of Columbia.
Submitted May 9, 1929. Decided
June 3, 1929.

Partial Rehearing Denied June 26, 1929.

No. 4762.

John E. McClure, of Washington, D. C., for appellant.

M. W. Willebrandt, Asst. Atty. Gen., and C. M. Charest, of Washington, D. C., Thos. P. Dudley, Jr., of Chicago, Ill., and Sewall Key, and H. R. Gamble, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

MARTIN, Chief Justice. This appeal is taken by the taxpayer from a deficiency determination as to income and profits taxes of appellant for the years 1919 and 1920, made by the Commissioner of Internal Revenue and affirmed by the Board of Tax Appeals. 7 B. T. A. 1307.

The issues relate to a transaction whereby two established state banks of St. Louis, Mo., namely, the Lafayette Bank and the South Side Bank, were amalgamated into a new state bank named the Lafayette-South Side Bank.

The Lafayette Bank had capital stock outstanding to the amount of $200,000, while the South Side Bank had $500,000 of stock outstanding. On January 14, 1915, the two banks with the approval of all their stockholders entered into a written agreement for the formation of a new bank, to be known as Lafayette-South Side Bank, which was to have a capital stock of $800,000, of which the Lafayette Bank was to receive $300,000, and the South Side Bank was to receive the remaining $500,000. The two old banks were to pay for these shares by a transfer of approved tangible assets at the rate of 156 per cent. of the par value of the stock issued to them. Each of the old banks was also to transfer to the new bank approved tangible securities of the value of $100,000 to serve as a guaranty fund to cover contingent losses on the assets turned over by them to the new bank. The old banks were to turn over to the new bank their good will and customers, but it was agreed that no valuation was to be placed upon the "good will," "business," or "going value" of either of the old banks. The latter were to retire at once from the banking business and were to liquidate their remaining assets, wind up their affairs, and

procure a dissolution of their charters not later than five years from the incorporation of the new bank. For the purpose of this agreement the stockholders of each of the old banks appointed a board of three trustees, and respectively transferred to the trustees all of the capital stock held by them. The stock in the old banks so transferred was canceled, and new shares therefor were issued to the respective trustees, to be held and voted by them in such manner as was necessary to carry out the aforesaid agreement. The trustees were also to receive, respectively, the shares of stock of the new bank allocated to the stockholders of the old banks, and were to distribute the stock accordingly. At the time of these transactions the two old banks were owned and operated by entirely different stockholders, there being only one person who held stock in both banks, and his holdings in one of them was but negligible. The agreement between the banks was fully carried out. The new bank began business in 1916, and the old banks in due course were wound up and went out of business. The taxes now in controversy are those of the new bank, which is the appellant herein.

■ The appellant challenges the Commissioner's determination upon three grounds, the first of which is a claim that under the circumstances the appellant and the two old banks were affiliated corporations during the taxable years 1919 and 1920, within the meaning of the Revenue Act of 1918. If this claim be allowed, appellant's profit taxes would be reduced, for the capital upon which nontaxable income was allowed would be correspondingly increased.

It is provided by section 240 (a) of the act (40 Stat. 1082) that "corporations which are affiliated within the meaning of this section shall, under regulations to be prescribed by the Commissioner with the approval of the Secretary, make a consolidated return of net income and invested capital for the purposes of this title and title III, and the taxes thereunder shall be computed and determined upon the basis of such return. * * *" The same section provides that: "For the purpose of this section two or more domestic corporations shall be deemed to be affiliated (1) if one corporation owns directly or controls through closely affiliated interests or by a nominee or nominees substantially all of the stock of the other or others; or (2) if substantially all the stock of two or more corporations is owned or controlled by the same interests."

This definition effectually negatives the contention that the three banks were "affiliated" corporations; for none of them owned substantially all of the stock of the other or others, nor did any one of them control such stock, either directly or through closely affiliated interests, or by a nominee or nominees. The entire capital stock of each old bank was held by trustees selected by its own stockholders, who were to liquidate the remaining assets of the banks, and were to represent the bank in carrying out on its part the obligations imposed by the contract.

The term "affiliated corporations" is explained in article 631, Regulations 45, T. D. 3146, as follows: "The provision of the statute requiring affiliated corporations to file consolidated returns is based upon the principle of levying the tax according to the true net income and invested capital of a single business enterprise, even though the business is operated through more than one corporation. Where one corporation owns the capital stock of another corporation or other corporations, or where the stock of two or more corporations is owned by the same interests, a situation results which is closely analogous to that of a business maintaining one or more branch establishments. In the latter case, because of the direct ownership of the property, the invested capital and net income of the branch form a part of the invested capital and net income of the entire organization. * * * *"

It is difficult to see how the three banks in question could have been affiliated corporations in the years 1919 and 1920, inasmuch as the old banks were no longer going concerns at that time, enjoying no income except such as accrued upon their remaining unliquidated assets, while the new bank had no interest whatever in the income of the old banks, nor did the old banks as such have any interest in the income of the new bank.

In article 633 of the same regulations the term "the same interests," as employed in the statute, is explained as follows: "The words 'the same interests' shall be deemed to mean the same individual or partnership or the same individuals or partnerships, but when the stock of two or more corporations is owned or controlled by two or more individuals or by two or more partnerships a consolidated return is not required unless the percentage of stock held by each individual or each partnership is substantially the same in each of the affiliated corporations." It is manifest that such a condition

did not exist in this case, for no stockholder held the same percentage of stock in each of the three banks or in any two of them.

The second contention of appellant is that it is entitled to include in its invested capital account the actual cash value of the good will of the two old banks when turned over to the new bank. This claim is based upon section 326 (a), subsec. (4), title 3, of the Revenue Act of 1910, 40 Stat. 1092. It is provided therein that the term "invested capital" for any year as used in the title shall include:

"(4) Intangible property bona fide paid in for stock or shares prior to March 3, 1917, in an amount not exceeding (a) the actual cash value of such property at the time paid in, (b) the par value of the stock or shares issued therefor, or (c) in the aggregate 25 per centum of the par value of the total stock or shares of the corporation outstanding on March 3, 1917, whichever is lowest."

It may be noted that the term "intangible property," as used in the title, includes "good will." Section 325 (a), 40 Stat. 1091.

Appellant's contention however is effectually answered by the fact that the parties expressly stipulated in the organic contract that no value should be placed upon the good will of the old banks when transferred to the new bank, and that no stock was actually issued therefor. The value of the good will accordingly cannot be included in the invested capital account since no stock was issued therefor. Baker & Taylor Co. v. United States (C. C. A.) 26 F.(2d) 187. Furthermore, it would have been unlawful for the new bank to issue stock in payment of the good will of the old banks. Revised Statutes of Missouri 1919, § 11728, par. 3.

The remaining contention of appellant is that, if the value of the good will of the old banks cannot be included in the invested capital account of the new bank, it should nevertheless be allowed as paid-in surplus under subsection (3) of section 326(a) aforesaid. We are of the opinion however that subsection (3) relates only to paid-in surplus represented by tangible property, and accordingly that the value of the acquired good will in this case cannot be classified as paid-in surplus. Otherwise intangible property such as good will could be paid in to an indefinite amount under subsection (3) to increase the invested capital

account, whereas subsection (4), which deals specifically with paid-in intangible property, limits the amount thereof to the par value of the stock issued therefor, or in the aggregate to 25 per centum of the total outstanding stock of the corporation. Such a construction would be incongruous, and cannot be accepted. Baker & Taylor Co. v. United States (D. C.) 21 F.(2d) 787, 789.

The decision of the Board of Tax Appeals is affirmed, with costs.